17-4116-cr
United States v. Peña

 UNITED STATES COURT OF APPEALS
 FOR THE SECOND CIRCUIT

 SUMMARY ORDER
Rulings by summary order do not have precedential effect. Citation to a summary order filed
on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate
Procedure 32.1 and this Court’s Local Rule 32.1.1. When citing a summary order in a
document filed with this Court, a party must cite either the Federal Appendix or an
electronic database (with the notation “summary order”). A party citing a summary order
must serve a copy of it on any party not represented by counsel.

 At a stated term of the United States Court of Appeals for the Second Circuit, held at
the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York,
on the 15th day of February, two thousand nineteen.

PRESENT: GUIDO CALABRESI,
 JOSÉ A. CABRANES,
 RICHARD C. WESLEY,
 Circuit Judges.

UNITED STATES OF AMERICA,

 Appellee, 17-4116-cr

 v.

JUAN PEÑA, AKA JOHN JOHN

 Defendant-Appellant.

FOR APPELLEE: MICHAEL D. GADARIAN (Miroslav Lovric,
 on the brief), Assistant United States
 Attorneys, for Grant C. Jaquith, United
 States Attorney for the Northern District
 of New York, Syracuse, NY.

FOR DEFENDANT-APPELLANT: JEFFREY R. PARRY, Fayetteville, NY.

 Appeal from an amended judgment of the United States District Court for the Northern
District of New York (Thomas J. McAvoy, Judge).

 1
 UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED,
ADJUDGED, AND DECREED that the amended judgment of the District Court be and hereby
is REMANDED.

 Defendant-Appellant Juan Peña (“Peña”) appeals from an amended judgment entered on
December 19, 2017, sentencing him to 187 months’ imprisonment. He argues that the District
Court procedurally erred in applying a “career offender enhancement” under United States
Sentencing Guidelines (“U.S.S.G.” or “Guidelines”) §§ 4B1.1 and 4B1.2(a). He further contends that
he was deprived of his Sixth Amendment right to counsel during the 35-day period he was being
transported from the Southern District of New York to the Northern District of New York. We
assume the parties’ familiarity with the underlying facts, the procedural history of the case, and the
issues on appeal.

 I. Standard of Review

 “When reviewing Guidelines calculations, we ordinarily apply a de novo standard to legal
conclusions and we accept the sentencing court’s factual findings unless they are clearly erroneous.”
United States v. Pereira-Gomez, 903 F.3d 155, 161 (2d Cir. 2018) (internal quotation marks omitted).
But where a defendant raises an argument for the first time on appeal, we review his claim for plain
error. Id. “We apply the plain error standard less stringently in the sentencing context, where the
cost of correcting an unpreserved error is not as great as in the trial context.” Id. (internal quotation
marks omitted).

 The plain error standard is satisfied when: (1) “there [is] an error that has not been
intentionally relinquished or abandoned”; (2) “the error [is] plain—that is to say, clear or obvious”;
(3) “the error . . . affected the defendant’s substantial rights”; and (4) “the error seriously affects the
fairness, integrity or public reputation of judicial proceedings.” Rosales-Mireles v. United States, 138 S.
Ct. 1897, 1904-05 (2018) (internal quotation marks omitted). “In the ordinary case . . . the failure to
correct a plain Guidelines error that affects a defendant’s substantial rights will seriously affect the
fairness, integrity, and public reputation of judicial proceedings.” Id. at 1911.

 II. Career Offender Enhancement

 Pursuant to § 4B1.1(a) of the Guidelines, a defendant is a career offender if:

 (1) the defendant was at least eighteen years old at the time the
 defendant committed the instant offense of conviction; (2) the
 instant offense of conviction is a felony that is either a crime of
 violence or a controlled substance offense; and (3) the defendant has
 at least two prior felony convictions of either a crime of violence or a
 controlled substance offense.

 2
U.S.S.G. § 4B1.1(a) (2016). As is relevant here, the Guidelines define a “crime of violence” as any
offense punishable by imprisonment for a term exceeding one year that “has as an element the use,
attempted use, or threatened use of physical force against the person of another.” Id. § 4B1.2(a)(1).
The Guidelines further define the term “two prior felony convictions” as convictions in which the
sentences count separately under the provisions of § 4A1.1(a), (b), or (c). See id. § 4B1.2(c). The
commentary explains that the provisions of § 4A1.2, which provide definitions for § 4A1.1, are
applicable to the counting of convictions under § 4B1.1. See id. § 4B1.2 cmt. n.3.

 Section 4A1.2(a)(2) instructs courts on how to determine whether prior sentences should be
counted separately. It provides:

 Prior sentences always are counted separately if the sentences were
 imposed for offenses that were separated by an intervening arrest (i.e.,
 the defendant is arrested for the first offense prior to committing the
 second offense). If there is no intervening arrest, prior sentences are
 counted separately unless (A) the sentences resulted from offenses
 contained in the same charging instrument; or (B) the sentences were
 imposed on the same day. Treat any prior sentence covered by (A) or
 (B) as a single sentence.

 Peña’s presentence investigation report (“PSR”) lists three prior felony convictions in New
York State court: (1) attempted robbery in the second degree; (2) robbery in the third degree; and (3)
attempted assault in the second degree. There is no dispute that attempted second-degree robbery
and third-degree robbery constitute “crimes of violence.” See Pereira-Gomez, 903 F.3d at 166. The
question, then, is whether these convictions can be counted separately under § 4A1.2(a)(2).

 Peña pleaded guilty to the attempted second-degree robbery and the third-degree robbery
charges on October 25, 2005 and was given concurrent sentences. The PSR does not reflect a
sentencing date for the attempted second-degree robbery offense. It does, however, indicate April 6,
2006 as the date of sentencing for the third-degree robbery offense. As the Government concedes,
the record is insufficient to determine whether there was an intervening arrest between the offenses
and, if not, whether the sentences were imposed on the same day. Therefore, the record—as
currently constituted—is insufficient to support the application of the career offender enhancement
based solely on the attempted second-degree and third-degree robbery convictions.

 Because it is unclear whether the two robbery convictions can be counted separately, the
only way Peña’s career offender enhancement can stand is if his conviction for attempted second-
degree assault in violation of New York Penal Law (“N.Y.P.L.”) § 120.05 also qualifies as a “crime

 3
of violence.”1 The parties disagree on the divisibility of N.Y.P.L. § 120.05 and the applicability of the
two-step “modified categorical approach” in determining whether Peña’s prior assault conviction
constitutes a crime of violence.

 In our view, however, it is clear that N.Y.P.L. § 120.05 is a divisible statute—for it is one
that “sets out one or more elements of the offense in the alternative.” Descamps v. United States, 570
U.S. 254, 257 (2013). Therefore, the modified categorical approach applies. Id. at 261-62.

 When applying the modified categorical approach, a district court may consult a
circumscribed set of documents relating to the defendant’s prior conviction in order to ascertain
whether his guilty plea “necessarily admitted facts demonstrating that his conviction was for a crime
of violence.” United States v. Reyes, 691 F.3d 453, 458 (2d Cir. 2012) (internal quotation marks and
brackets omitted). The district court’s inquiry is “limited to the terms of the charging document, the
terms of a plea agreement or transcript of colloquy between judge and defendant in which the
factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of
this information.” Shepard v. United States, 544 U.S. 13, 26 (2005).

 During the resentencing hearing, the District Court concluded that Peña had been convicted
under N.Y.P.L. § 120.05(2),2 which it determined to be “categorically a crime of violence.”
Defendant-Appellant App. 145. But it is unclear from the record how the District Court concluded
that Peña had been convicted under § 120.05(2) rather than other subsections that may not be
crimes of violence. The PSR—which the District Court presumably consulted—describes Peña’s
prior assault conviction as follows:

 According to New York State Division of Criminal Justice Services
 [“DCJS”] records, the defendant was initially charged with Assault,
 2nd: Intent to Cause Physical Injury with Weapon/Instrument;
 Assault, 2nd: Injure Person While Confined in a Correctional Facility;
 Assault, 3rd; Obstruction of Governmental Administration, 2nd; and
 Harassment, 2nd.

 1
 It is undisputed that the conviction for attempted second-degree assault can be counted
separately.
 2
 Section 120.05(2) provides that a person is guilty of assault in the second degree when “[w]ith
intent to cause physical injury to another person, he causes such injury to such person or to a third
person by means of a deadly weapon or a dangerous instrument.” N.Y.P.L. § 120.05(2).

 4
 During the instant presentence interview, Pe[ñ]a reported this arrest
 is the result of a fistfight with another inmate. He denies the use or
 possession of any weapon during the fight.

PSR ¶ 74. The Government contends that Peña had to have been convicted under either N.Y.P.L.
§§ 120.05(2) or 120.05(7)3 because the PSR’s description appears to track the statutory language of
those subsections. But even assuming, arguendo, that: (1) DCJS records qualify as Shepard documents;
and (2) that a district court can rely on references to DCJS records within a PSR in determining the
applicability of a sentencing enhancement, see United States v. Dantzler, 771 F.3d 137, 147 (2d Cir.
2014) (expressly reserving judgment on whether a district court can rely on a PSR’s description of a
prior conviction where the PSR references Shepard-approved documents), Peña’s PSR cannot serve
as the exclusive basis for the District Court’s “crime of violence” determination. The PSR, by its
own terms, purports to describe only how Peña was initially charged, not the subsection to which he
ultimately pleaded guilty. Nothing else in the record supports the District Court’s conclusion that Peña
pleaded guilty to a subsection that is categorically a crime of violence. Accordingly, the District
Court plainly erred in applying a career offender enhancement based on Peña’s N.Y.P.L. § 120.05
conviction, pursuant to the modified categorical approach, in the absence of any Shepard-approved
documents.

 Upon remand, if the Government renews its request to the District Court that it apply the
career offender enhancement, it must submit materials consistent with Shepard to demonstrate that
Peña’s prior assault conviction is a crime of violence or, if necessary, determine whether the
sentences for Peña’s prior robbery convictions can be counted separately.4

 3
 Section 120.05(7) provides that a person is guilty of assault in the second degree when
“[h]aving been charged with or convicted of a crime and while confined in a correctional facility . . .
pursuant to such charge or conviction, with intent to cause physical injury to another person, he
causes such injury to such person or to a third person.” N.Y.P.L. § 120.05(7).
 4
 Insofar as Peña argues that no conviction under N.Y.P.L. § 120.05 can constitute a “crime of
violence” because New York State does not designate it as such in its penal code, Peña and his
counsel are referred generally to Jerome v. United States, 318 U.S. 101, 104 (1943), and its progeny. See,
e.g., United States v. Townsend, 897 F.3d 66, 71 (2d Cir. 2018) (“As a general rule, commonly called the
Jerome presumption, the application of a federal law does not depend on state law unless Congress
plainly indicates otherwise.”).

 5
 III. Sixth Amendment Right to Counsel

 Peña further argues that he was deprived of his Sixth Amendment right to counsel during
the 35 days it took for the U.S. Marshals Service to transport him from the Southern District of
New York to the Northern District of New York. Peña does not claim that this temporary
deprivation rendered his guilty plea involuntary or unintelligent; accordingly, his Sixth Amendment
argument was waived at the time he pleaded guilty. See Tollett v. Henderson, 411 U.S. 258, 267 (1973)
(“[A] guilty plea represents a break in the chain of events which has preceded it in the criminal
process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of
the offense with which he is charged, he may not thereafter raise independent claims relating to the
deprivation of constitutional rights that occurred prior to the entry of the guilty plea.”).

 CONCLUSION

 We have reviewed the remaining arguments raised by Peña on appeal and find them to be
without merit. For the foregoing reasons, we REMAND the December 19, 2017 amended
judgment for resentencing consistent with this order.

 FOR THE COURT:
 Catherine O’Hagan Wolfe, Clerk

 6